IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TIMOTHY ROBERT HARLOW, ) | Civil Action No. 7:11-cv-00591 | |
|    Petitioner, ) | | |
| ) | | |
| v. ) | **MEMORANDUM OPINION** | |
| ) | | |
| WILLIAM D. JENNINGS, ) | By:   Hon. Michael F. Urbanski | |
|    Respondent. ) |        United States District Judge | |

Timothy Robert Harlow, a Virginia inmate proceeding with counsel[1], filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. A jury in Shenandoah County, Virginia, convicted petitioner of first-degree murder and using a firearm to commit murder but acquitted him of abduction, and petitioner now expresses his dissatisfaction with the outcome by alleging that counsel[2] rendered ineffective assistance, in violation of the Sixth Amendment. Because plaintiff received reasonable professional assistance and did not establish a reasonable probability that the trial's outcome could have been different, the court grants respondent's motion to dismiss.

I.

A.    Petitioner's State Criminal Proceedings

Petitioner drank more than six beers and more than half of a 1.75 liter bottle of mescal liquor throughout the day on June 18, 2004. At 10:30 that night, petitioner and his wife drove a short distance to visit their neighbors, Billie Viles and Darryl Locklear. Soon after arriving at

---

[1] Because petitioner is proceeding with counsel, the court does not liberally construe petitioner's pleadings. See, e.g., Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

[2] Petitioner had four counsel represent him between his arrest and the entry of judgment. The Circuit Court of Shenandoah County ("circuit court") appointed the first counsel, who filed a motion for an investigator and then withdrew due to a conflict of interest. The circuit court appointed a two-attorney team ("attorney team") to replace the first counsel, and the attorney team obtained two continuances and a plea offer. Petitioner rejected the proposed plea agreement offered by the Commonwealth. Thereafter, the circuit court allowed the attorney team to withdraw as counsel and appointed a new attorney ("trial counsel"), who represented petitioner during discovery, trial, and sentencing.

Viles' trailer, petitioner fought with Locklear, who beat him into a corner of the trailer's deck before Leslie Lear, one of the other guests, pulled Locklear off petitioner. As petitioner left the scene with Lear to return to his trailer, he was heard to say, "That's Okay, you mo[…]kers, I'll come back and shoot you."

Thirteen-year old Chris Gray, who is petitioner's stepson, was at petitioner's trailer when petitioner and Lear returned. Petitioner told Gray, "Look for my guns. They ain't going to make me look like a chicken." Gray and Lear tried to calm petitioner, but he rejected their pleas and said, "Well, if I don't do nothing about it, he's going to keep bragging about it." Gray hid about eight or nine guns, and petitioner went into his bedroom. Thinking that petitioner was asleep, Lear and Gray returned to Viles' trailer.

Five or ten minutes later, petitioner crashed his vehicle at a high rate of speed into the deck stairs outside Viles' trailer. Petitioner exited the vehicle, pulling a shotgun from the vehicle, and approached the demolished deck stairs. Locklear began to retreat to the front door. Petitioner shot Locklear from his position below the deck, causing Locklear to fall through the doorway onto the living room floor. Petitioner then entered the trailer, twice stomped on Locklear's head, and said, "I told you, mo[…]ker, I'd be back." Locklear died soon after being shot.

Petitioner dropped the shotgun, and Gray picked it up and gave it to Lear, who threw it in the woods behind the trailer. The police found petitioner's shotgun in the woods the next morning at around 8:30 a.m.

2

Petitioner and Lear immediately fled from Shenandoah County to West Virginia, where he was arrested the next day. Petitioner told the police that he "shot that man last night" because Locklear beat him up and came toward him again after petitioner returned with a gun. Petitioner also told police that his shoulder felt sore from Locklear knocking him down and said, "That's all right. I took care of it though. . . . I went back and shot him."

An Assistant Chief Medical Examiner for the Commonwealth of Virginia testified at trial that a shotgun blast fired from an estimated range of three to five feet killed Locklear. The shotgun pellets shattered Locklear's upper left arm and stopped inside his chest. The Medical Examiner testified that the fatal shot came at such a close range that the wadding from the shotgun shell was embedded in Locklear's arm. The Medical Examiner could not offer any testimony about how Locklear stood when petitioner shot him, whether he flinched or ducked or even whether he was standing, leaning, or sitting, but could state that the pellets entered Locklear's body at a slightly-downward angle.

A forensic firearm expert testified that number six, small-game load from petitioner's 20 gauge shotgun caused the fatal wound. The firearm expert explained that no one asked him to make a scientific determination of the distance from which petitioner shot Locklear, but he estimated that the shot was from "probably not less than six feet." This estimate was only a "rough approximation," which could not be confirmed without test-firing the firearm at known distances. The firearm expert explained that the presence of the wadding in the wound supported the conclusion that the shot had to be "a very close shot."

3

The testimony of the Medical Examiner and firearm expert conflicted with the testimony of Gray, who testified that Locklear stood on the deck when petitioner shot him from the ground in the area where petitioner destroyed the deck stairs. Gray described the distance between Locklear and petitioner as the approximate distance between the witness box and the end of the courtroom, which the parties stipulated as being between thirty and thirty-five feet. Gray also testified that a single, number six "birdshot" shell was the only ammunition available for that 20 gauge shotgun.

Petitioner testified at trial that he saw his wife's bra on Viles' deck when he returned from his trailer, which made him "go off." Petitioner claimed he and Locklear were inside Viles' trailer when Locklear came running at him, petitioner pulled the shotgun, and the shotgun discharged. Petitioner denied stomping on Locklear's head, saying he only stumbled into it because he was drunk. Petitioner further explained that he was "sorry every day," he acted in self-defense, it was an accident, and he was mad. The jury convicted petitioner of first-degree murder and use of a firearm in the commission of the murder but acquitted him of abducting Leslie Lear while fleeing to West Virginia.

B.  PETITIONER'S STATE HABEAS PROCEEDINGS

Petitioner filed a pro se petition for a writ of habeas corpus with the Shenandoah County Circuit Court, which construed the petition as alleging five separate claims of ineffective assistance of counsel:

- Counsel did not prepare for trial;
- Counsel failed to put on any witnesses;
- Counsel claimed he could persuade the jury;
- "Counsel missed the evidence at trial []which demonstrated the impossibility of

4

> petitioner firing the fatal shot—further, when counsel did get a sense of the impossibility of petitioner firing the fatal shot, the prosecutor challenged his memory of the expert testimony, and because he had not prepared for trial, he was bluffed from arguing petitioner's innocence"; and
> 
> - "After the trial court ruled petitioner could not put on evidence of the decedent's vicious character, counsel twice objected to the prosecution putting on evidence of the good character of the decedent. Allowing that evidence to be presented would have opened the door to the presentation of evidence of the decedent's bad character. Counsel thereby missed two opportunities to show the bad character of the decedent, which may have resulted in conviction of a lesser charge."

Harlow v. Braxton, No. CL07-301, slip op. at 6 (Va. Cir. Ct. Mar. 2, 2011). Petitioner also filed an affidavit from his brother, William Harlow. William Harlow averred that he and his friend, Burt Lear, went to the crime scene the next day at around 8 a.m. to find petitioner and Leslie Lear. William Harlow explained:

> We found neither person[] but <u>did find clearly [sic] looked like my brother's 20 gauge shotgun in the woods</u> a considerable distance from . . . Ms. Viles['] trailer. Neither of us touched the [shotgun] while I was there. After the unsuccessful search for Ms. Lear and my brother, I left. [] <u>I recognized my brother's shotgun and saw what I believe was blood on the shotgun</u>. At trial, the shotgun was very clean.

(William Harlow First Aff. ¶¶ 1-2 (emphasis added).) William Harlow also averred that trial counsel was not interested in William Harlow's experience shooting shotguns, and he expressed his dissatisfaction with trial counsel's performance, partly because trial counsel "showed no interest" about "the blood on the my [sic] brother's shotgun." (Id. ¶ 3.) William Harlow and other family members allegedly would have testified during trial that petitioner "was a very peaceful, friendly and helpful person." (Id.)

The circuit court reviewed the merits of these claims and concluded that petitioner did not establish trial counsel's ineffective assistance. Petitioner, by counsel, appealed to the Supreme

5

Court of Virginia, recasting the petition filed in the circuit court as five claims of ineffective assistance by trial counsel:

- Inadequate trial preparation;
- Failure to call a key witness, William Harlow[3];
- Proceeding on the assumption that the defense could rely on counsel's ability to persuade the jury;
- Inadequate presentation of defense; and
- Presenting an illogical and damaging closing argument.

(Pet'r's Pet. for Appeal 1-2.) The Supreme Court of Virginia found no reversible error in the circuit court's opinion and refused the appeal. Harlow v. Braxton, No. 111014, slip op. at 1 (Va. Sept. 7, 2011).

Petitioner timely filed the instant federal habeas petition and presents three claims of ineffective assistance of counsel:

(1) All counsel did not investigate the facts supporting the case, inquire into reasonable potential defenses, or prepare for trial because they otherwise would have discussed the alleged second shotgun, challenged the Medical Examiner's testimony and the distance of the shot, and would not have called petitioner to testify;

(2) Trial counsel did not prepare for trial as evidenced by calling petitioner to testify, rambling, inculpatory opening and closing statements, a poor trial strategy, his failure to capitalize on the existence of the alleged second shotgun, his failure to challenge the Medical Examiner's testimony and distance of the shot; and

---

[3] Petitioner explicitly raised the issue of William Harlow not testifying for the first time on appeal. Habeas counsel told the Supreme Court of Virginia that petitioner "mistakenly stated [in the habeas petition], '[H]e {Defense counsel} put on no witnesses in the Case in Reply,['] where it should have read[, ']counsel failed to put on a material witnesses [sic]; to wit, William Harlow, infra.[']" (Pet'r's Pet. for Appeal 2 n.2.) Habeas counsel further explained:
> In his Petition, [petitioner] claimed [trial] counsel did not call a witness in the defense's case. What [petitioner] meant was, other than himself, [trial] counsel did not call witnesses who could build on his defense. For example, . . . William Harlow recovered what he believed was the real shotgun which he claimed had blood stains.

(Id. 16.) However, the argument that "the real shotgun" was not petitioner's shotgun used to kill Locklear is not supported by William Harlow's first affidavit or the trial record.

6

(3) Consequently, trial counsel's conduct was materially defective and below the threshold of acceptable representation required by the Sixth Amendment.

(Pet. 5-14.)

Petitioner attached to the instant petition a new affidavit from William Harlow that was not presented to the circuit court or the Supreme Court of Virginia. In contrast to the first affidavit stating he saw petitioner's shotgun, William Harlow's second affidavit says that he had advised trial counsel about a second shotgun. The affidavit reads:

> I am the brother of Petitioner . . .; I read the foregoing fourteen page of this petition believing the facts stated are true and correct to the best of my knowledge and belief. I advised [trial counsel] about the second shotgun, but he expressed no interest in the gun, the blood stains on it, or the crime scene. Several family members sat outside the court room anticipating being called to testify, but were not. I have been a life long [sic] hunter in our community of many hunters and gun enthusiasts.

(William Harlow Second Aff. 1.)

Petitioner relies on this new affidavit to now argue that the police found petitioner's "20 gauge shotgun which they used in the prosecution's case[,]" but William Harlow and Burt Lear "found the second shotgun which they claimed had blood stains on the front stock[.]" Petitioner concludes that "the second shotgun became a critical piece of exculpatory evidence," although no other evidence supports the existence of a second shotgun and all evidence, including William Harlow's first affidavit, indicate that petitioner's shotgun and the "second" shotgun are, in fact, the same firearm. No evidence suggests that anyone besides the police removed a shotgun from the woods.

7

## II.

A federal court "may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted . . . state remedies by presenting [the] claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). See 28 U.S.C. § 2254(b) (mandating exhaustion). The exhaustion requirement is satisfied when a petitioner presents in federal court the essential legal theories and factual allegations that were presented to the highest state court. Picard v. Connor, 404 U. S. 270, 275-76 (1971).

Petitioner presently argues in support of his claims that trial counsel was ineffective for calling petitioner to testify. (Pet. 6-7.) Petitioner did not present this claim to the Supreme Court of Virginia in an assignment of error or to the circuit court. See Va. Sup. Ct. R. 5:17(c)(1) ("[T]he petition shall list, clearly and concisely and without extraneous argument, the specific errors in the rulings below upon which the party intends to rely. An exact reference to . . . where the alleged error has been preserved in the trial court . . . shall be included with each assignment of error. . . . Only assignments of error assigned in the petition for appeal will be noticed by this Court."). Petitioner merely concluded in his Petition for Appeal to the Supreme Court of Virginia that calling petitioner as a witness was evidence of prejudice.[4]

This claim is considered exhausted and procedurally defaulted. Petitioner did not adequately present the claim to the Supreme Court of Virginia and now presents a substantially different claim in federal court. Petitioner cannot present the new, federal claim to the Supreme

---

[4] Petitioner specifically wrote, "[T]he last person in the universe to call in [petitioner]'s defense was [petitioner] . . . . [P]utting one's client on the stand to prejudice his defense is well below the Sixth Amendment guarantee of effective assistance of counsel." (Pet'r's Pet. for Appeal 23.)

8

Court of Virginia via a subsequent state habeas petition. See VA. CODE § 8.01-654(B)(2) ("No writ shall be granted on the basis of any allegation of facts of which petitioner had knowledge at the time of filing any previous petition."); Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006) (stating that a federal habeas claim may be procedurally defaulted if a state court can refuse to consider a claim's merits because of an adequate and independent state procedural rule); Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997) (holding that VA. CODE § 8.01-654(B)(2) constitutes an adequate and independent state-law ground for decision). Petitioner has not presented a reason to excuse this procedural default. See Harris v. Reed, 489 U.S. 255, 262 (1989) (excusing procedural default for a fundamental miscarriage of justice or cause and prejudice). Accordingly, the claim that counsel was ineffective for calling petitioner to testify is dismissed as procedurally defaulted.[5]

## III.

A. THE CIRCUIT COURT DISMISSED PETITIONER'S STATE HABEAS PETITION BECAUSE HE FAILED TO PROVE THAT TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.

A federal court may grant a habeas petition if the petitioner's custody violates federal law and a state court adjudication of a habeas claim's merits was contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The circuit court dismissed the petition after reciting why the claims were not supported by the record. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (holding

---

[5] This claim would not afford petitioner relief even if it was not procedurally defaulted. Petitioner could not have been prejudiced merely by his testimony in light of the Commonwealth's overwhelming incriminating evidence. Furthermore, trial counsel was not deficient because petitioner's testimony was necessary to contradict the Commonwealth's evidence about the abduction and intent to commit first-degree murder.

9

that a federal court can rely on a reasoned state court judgment resting primarily on federal law when later unexplained state court orders uphold that judgment).

The circuit court explained why petitioner's claims about pre-trial investigation and preparation failed:

> [Petitioner] alleges generally that counsel failed to prepare for trial. He further specifically contends that counsel failed to prepare in regard to the expert testimony regarding the firearm and the gunshot wounds, and as a result was unable to demonstrate the impossibility of petitioner's having fired the fatal shot.
>
> Petitioner's assertion that counsel's purported "unpreparedness" prevented counsel from showing it was impossible for [petitioner] to have fired the fatal shot is contradicted by the record. It was established by the testimony of multiple witnesses at trial that only a single shot was fired. Two eyewitnesses testified that [petitioner] got the shotgun out of the [vehicle and] proceeded to shoot Locklear with it. Petitioner admitted to the police, and testified at the trial, that he retrieved the shotgun, drove back to Viles' trailer and shot Locklear. There was no evidence whatever of any other shot, or any other shooter. On these facts, there was no possibility of any other conclusion but that [petitioner] fired the fatal shot, as he was the only person who fired a shot. Thus, the petitioner's claim is negated by the evidence and is contrary to his own trial testimony, in which he asserted he shot Locklear in self-defense, as well as by accident.
>
> In addition, petitioner's general claim that counsel did not prepare for trial is similarly without factual support, and states no more tha[n] a bare conclusion on his part.
> \* \* \*
> Petitioner alleges . . . counsel missed the evidence at trial "which demonstrated the impossibility of petitioner firing the fatal shot. . . ." The evidence at trial conclusively established that petitioner fired the fatal shot, not the impossibility of that proposition. Because there is no factual basis for this claim, petitioner cannot demonstrate that any omission of counsel was objectively unreasonable. Furthermore, counsel could not effectively argue that it was impossible for petitioner to have fired the fatal shot when petitioner admitted doing so and eyewitnesses, including his stepson, confirmed it.

Harlow v. Braxton, No. CL-07-301, slip op. at 6-8, 13. The circuit court also dismissed the arguments about calling William Harlow as a witness:

> [P]etitioner asserts that his counsel failed to put on any witnesses. This assertion is inaccurate in that counsel put on the petitioner as a witness in his own defense. It also

10

is clear from the record that the Commonwealth had already put on every other
surviving witness to the events at . . . Viles' house, as well as the police who made the
arrest and took [petitioner]'s statement, and the expert medical and firearm witnesses.
Because defense counsel had the advantage of cross examining these witnesses, he did
not need to call them in his case. . . .

Petitioner has made a proffer only of the proposed testimony of a single witness, his
brother William Harlow.

William Harlow avers the following: he found petitioner's 20 gauge shotgun at Billie
Viles' trailer the morning after the shooting, and it appeared to have blood on it.
William Harlow has long experience with shotguns, and knows the wadding will travel
no more than six feet from where the gun is fired, so there was no way petitioner could
have fired from 30 feet away. The downward path of the pellets in Locklear's body
shows he was shot from above, not from the ground where the eyewitnesses testified
petitioner was. The evidence showed that petitioner was returning to Viles['] trailer to
get his wife, and that Ms. Viles or Locklear had a handgun. William Harlow states he
informed petitioner's counsel of these things but counsel ignored them and took no
interest.

First, contrary to William Harlow's contentions, counsel did argue the points he raised
in his affidavit. He argued the discrepancy in the various witnesses' testimony
regarding the distance of the shot, and his own recollection of the expert's testimony
was in fact confirmed by the court. Counsel argued that Locklear was possibly armed
with a .25 pistol and that petitioner was scared of him. He argued that the path of the
pellets in Locklear's body did not comport with an upward shot from the ground. He
argued that petitioner was just coming to get his wife back, and that his anger was
justified due to Locklear's conduct with his wife. He argued accident, he argued for a
lesser offense and he argued for self defense. He argued lack of premeditation.

Id. at 9-10 (record citations omitted). The circuit court explained that the evidence at trial

established petitioner's culpability and did not support a finding that trial counsel rendered

ineffective assistance:

In view of the fact that the petitioner's firing of the fatal shot was proven by the
evidence and admitted by petitioner, the purportedly contradictory evidence offered by
William Harlow does not overcome the presumption that counsel "rendered adequate
assistance and made all significant decisions in the exercise of reasonable professional
judgment." Strickland, 466 U.S. at 690.

11

> Further[,] the evidence alluded to could easily have been explained or discounted. It is of no importance if blood was found on the gun. If the experts stated the shot was fired from five or six feet, the witness who estimated 30 feet was probably mistaken or misspoke. The downward path of the pellets in the victim's body was likely the result of the inclination his body rather than the downward flight of the projectiles. Finally, any disinterest in these areas was undoubtedly based upon counsel's knowledge that the identity of the shooter was not in doubt.
>
> Factually, petitioner's claim [that trial counsel failed to put on any witnesses, including William Harlow] is unsupported because [trial counsel] did call witnesses, and he did argue the points proffered by William Harlow. Further[,] petitioner has not demonstrated that, had William Harlow or other unidentified witnesses testified, there is a "<u>reasonable probability</u> that . . . the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694 (emphasis added). . . . Thus, in regard to the proffered evidence, petitioner has failed to show that his counsel performed deficiently in not presenting it, and has failed to show he was prejudiced by its lack of presentation.

<u>Id.</u> at 10-11. The circuit court noted that petitioner did not proffer the testimony of any other person besides William Harlow, which was fatal to a claim of inadequate investigation.

B. THE CIRCUIT COURT'S DISMISSAL OF THE STATE HABEAS PETITION WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW OR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.

In light of the evidence revealed during trial, the circuit court's reasoning was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. Petitioner fails to show that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). Petitioner also fails to establish a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

12

The jury heard how petitioner was excessively inebriated, and, to negate the intent needed to find petitioner guilty of first-degree murder, trial counsel argued that petitioner did not intend to shoot and kill Locklear. After explaining petitioner's state of inebriation and how Locklear beat petitioner, trial counsel told the jury:

> And nobody is going to dispute that my client then proceeded to get a firearm. This isn't a who-done-it kind of case. We know who had the gun, we know who shot it, and we know who died. But that doesn't make it a crime in this [C]ommonwealth, because you have to know why. You have to know what the intent was. Was it an accident? Was it defense of himself[] or his wife? Was it in the course of heat of passions?

(Tr. Tran. 191.) Trial counsel explored these legal defenses to give the jury a reason to find petitioner innocent or guilty of a lesser-included offense. Although petitioner wishes that trial counsel used a different strategy to cause the same outcome on the murder charge as the abduction charge, "[t]here are countless ways to provide effective assistance in any given case [and] [e]ven the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689.

Nothing about the fact that Gray told a different version of events than what the experts concluded from their research is a sufficient basis to establish trial counsel's ineffective assistance. The Medical Examiner acknowledged during trial counsel's cross examination that her testimony contradicted Gray's testimony that petitioner shot Locklear from thirty to thirty-five feet at an upward angle. However, the Medical Examiner's testimony was consistent with the firearms expert's "rough approximation" that the shot was made "very close, but probably not less than six feet" and was also consistent with petitioner's testimony that he was close to Locklear when the shotgun discharged.

13

The court may not assess the credibility of the witnesses or resolve factual conflicts in testimony. Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Instead, the court analyzes how counsel handled the divergent testimony and finds that trial counsel did not perform deficiently for not advocating Gray's testimony. Petitioner's testimony and primary defense was that he was close to Locklear when Locklear came at petitioner and petitioner shot Locklear in self defense, in the heat of passion, or accidentally after being startled by Locklear's approach. Trial counsel would have discredited both petitioner and the argued legal defenses if he relied on Gray's story to describe petitioner aiming a shotgun at Locklear thirty-plus feet away.

Trial counsel was not deficient for not arguing petitioner's "potential defense" that he shot at and missed Locklear from thirty-plus feet away and that another person at another time with another shotgun caused the fatal wound. No evidence in the trial record supports the existence of a second shot of number six, small-game load from a second shotgun. The only firearm was petitioner's 20-gauge, slide-action shotgun that fired one small-game load into Locklear.[6]

William Harlow admits in his first affidavit that he "recognized [his] brother's [20 gauge] shotgun" in the woods behind the crime scene. This observation is not surprising since that was the same area where Lear threw the shotgun right after petitioner shot Locklear, and it was where

---

[6] William Harlow explains in the second affidavit that he had advised trial counsel "about the second shotgun . . . [and] the blood stains on it," and petitioner faults trial counsel for not presenting the alleged second shotgun as exculpatory evidence. However, the court declines to consider the second affidavit because it was not part of the state court record. See Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). Instead, the court relies on the first affidavit provided to the circuit court, in which William Harlow averred that he saw petitioner's shotgun, not a mythical second shotgun, behind the crime scene.

14

the police confiscated the shotgun approximately thirty minutes after William Harlow saw it. The police found only one shotgun: petitioner's shotgun that he used to murder Locklear.

Based on William Harlow's testimony in the first affidavit, trial counsel was not deficient for not calling William Harlow to testify. The only relevant testimony William Harlow could offer was that he found petitioner's blood-stained shotgun behind the crime scene. Nothing about that fact demonstrates a reasonable probability that the result of the proceeding would have been different.

Petitioner failed to overcome the strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance, and he cannot construct a Sixth Amendment violation from insufficient examples of prejudice. Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998). To the extent petitioner faults any counsel he had before trial counsel, he failed to establish any deficient performance or resulting prejudice because none of the previous counsel were involved with the trial. Petitioner failed to establish that trial counsel rendered ineffective assistance, and thus, the circuit court's dismissal of the state habeas petition was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.

## IV.

For the foregoing reasons, the court grants respondent's motion to dismiss and dismisses the petition for a writ of habeas corpus. Based upon the court's finding that petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

15

Case 7:11-cv-00591-MFU-RSB   Document 17   Filed 08/16/12   Page 15 of 16   Pageid#: 158

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to counsel of record.

Entered: August 16, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

16